GUY S. MARTIN, Appellant, v. REGINALD B. POTASHNICK, Respondent.
—No. 41121.—217 S. W. (2d) 379.

Division Two, February 14, 1949.

*Martin, Peper & Martin, William McChesney Martin, Christian B. Peper* and *Malcolm W. Martin* for appellant.

*Finch & Finch* by *Lehman Finch* and *J. A. Gochenour* for respondent.

[380] BARRETT, C.—In this action the plaintiff seeks to recover the sum of $11,262.75 from his former partner, Reginald B. Potashnick. The trial court sustained a motion to dismiss his petition and the question to be decided is whether he has pleaded and relies upon a cause of action governed by the somewhat uncommon first section of our ten-year statute of limitations: "an action upon any writing, . . . for the payment of money." Mo. R. S. A., Sec. 1013. If he does not rely upon and has not pleaded a cause of action upon a writing for the payment of money his cause is barred by the five-year stat-

ute of limitations. Mo. R. S. A., Sec. 1014. Broadly construing the petition most favorably to the plaintiff (Home Ins. Co. v. Mercantile Tr. Co., 219 Mo. App. 645, 284 S. W. 834, 835) the precise question is whether the writing, under the allegations of the petition, either expressly or by fair implication contains a promise to pay money. Herweck v. Rhodes, 327 Mo. 29, 33, 34 S. W. (2) 32, 33; Parker-Washington Co. v. Dennison, 267 Mo. 199, 183 S. W. 1041.

The petition, in separately numbered paragraphs, first alleges that the defendant and the plaintiff entered into a written contract on the 10th day of October 1940. The petition then states, before setting forth the contract, that prior and subsequent to the date of the contract the plaintiff and the defendant had a mutual running account with each other. A separate paragraph sets forth the substance of the written agreement, that there were differences between the plaintiff and the defendant as to the amount the one owed to the other, and says that "the determination of what the indebtedness actually was as between the parties to said agreement, should be submitted to one John Fabick or to some other party to be mutually agreed upon as arbitrator," the decision of the arbitrator to be final. The petition alleges the plaintiff's willingness to arbitrate but charges that the defendant refused to submit the matter of an accounting to Fabick and has failed and refused to take any step towards the selection of an arbitrator or the submission of the items set forth in their agreement to arbitration and, therefore, the plaintiff says the arbitration was not and could not be had. And, the petition asserts, "He is seeking to recover from defendant for the items enumerated in said written agreement and set out hereinafter in paragraphs 11 and 12, by virtue of an open, current and mutual account on transactions had between plaintiff and defendant prior to said October 16, 1940, and that defendant is indebted to plaintiff by reason of said account in the sum of $11,262.75, and as set forth therein." Then, without reference to any other allegation, the petition sets forth the writing:

"October 10, 1940.

Received of R. B. Potashnick, check for One Thousand Nine Hundred Fifty Dollars and *Ninety*-Six Cents ($1,955.96) in full payment of all and any notes and accounts of whatever kind or nature, with the exception of the items herein below listed, which it has been agreed between us, are to be submitted to John Fabick or to some other party mutually agreed upon as arbitrator, [381] and whose decision shall be final and binding upon R. B. Potashnick and myself. It is to be understood that settlement shall be named within five days after decision of such arbitrator."

Then follows the list of items totalling $11,262.75 headed "Martin Charges Against Potashnick."

The plaintiff points to the written contract and urges that it is more than a mere agreement to arbitrate. He argues that the con-

tract contains, in addition to the agreement to arbitrate, an affirmative promise to pay an amount to be ascertained by arbitration; a promise to pay a matured obligation, the only contingency being a finding by an arbitrator or a court that the items in dispute were valid charges against Potashnick. Admittedly, if the language of the writing, by fair implication, is susceptible to the construction that it contains a promise to pay money there can be no objection to the fact that the precise sum to be paid is contingent or conditional and to be ascertained after the promise to pay has been made.. Lorberg v. Jaynes, (Mo. App.) 298 S. W. 1059; annotation 111 A. L. R. 984. Once, by fair implication, the obligation is found, the exact amount to be paid or other detail of the obligation may be shown by extrinsic evidence. Brown v. Irving, (Mo. App.) 269 S. W. 686; annotation 129 A. L. R. 603, 611. But the obligation contemplated by the statute, and upon which the plaintiff must necessarily rely, is the promise to pay money. Parker-Washington Co. v. Dennison, supra. And that promise or obligation must arise from the language and fair implication of the writing. The promise may not be shown by extrinsic evidence or consist of an obligation imposed by law from the facts of the transaction. Herweck v. Rhodes, supra. In this connection, as we have indicated, the plaintiff's emphasis, in fact his entire argument, is upon the writing alone. But there is a further aspect of his case which cannot be ignored and that is the essence and nature of his whole petition. When these two aspects of his cause are considered it becomes quite clear that the obligation which he seeks to enforce is not upon a promise contained in "any writing, . . . for the payment of money," and it becomes unnecessary to make this case turn alone upon whether a written agreement to submit a dispute to arbitration is a promise in writing for the payment of money within the meaning of the ten-year statute of limitations.

▮ But, considering first the agreement, the essence of a promise to pay money is that it is an acknowledgment of an indebtedness, an admission of a debt due and unpaid. 34 Words & Phrases, p. 295; Babler v. Rhea, (Mo.) 202 S. W. 604. An agreement to submit the controverted items of a mutual account to an arbitrator and abide by his decision is a contract (Thatcher Implement & Merc. Co. v. Brubaker, 193 Mo. App. 627, 633, 187 S. W. 117) and it may be an admission that there was something unsettled but it is not necessarily, even by fair implication, an acknowledgment of an indebtedness. Cowart v. Perrine, 18 N. J. E. 454. If the debt were acknowledged there would be no point in submitting it to an arbitrator. In Lehner v. Roth, 211 Mo. App. 1, 227 S. W. 833, the instrument said "pay to the order of Mike Lehner $834," but it was held that the writing was not an acknowledgment of an indebtedness of the defendant to the plaintiff from which the law would imply a promise to pay money within the meaning of the ten-year statute of limitations. But, as we have

indicated, it is not necessary upon this record to make the somewhat irretractable decision that a written agreement to submit disputed mutual accounts to arbitration is not governed by the ten-year statute of limitations. It is sufficient for the purposes of this opinion to consider the point only in so far as it bears upon the essence of the plaintiff's cause of action and the precise obligation he seeks to enforce.

When the essential nature and essence of the plaintiff's cause of action is analyzed it becomes apparent that the obligation he seeks to enforce is not the written promise in the writing. This suit does not involve the breach of any promise to arbitrate and it does not seek to enforce, in any manner, a contract to arbitrate. Sturges, Commercial Arbitrations, Secs. 84-87. [382] Neither is it an action for damages for breach of a written contract. Barnett & O'Neal v. Elwood Grain Co., 153 Mo. App. 458, 133 S. W. 856. The items and obligation which he seeks to enforce are set forth and contained in a written contract but the essence of his cause of action is, as he plainly states, that "He is seeking to recover from defendant for the items enumerated in said written agreement and set out hereinafter in paragraphs 11 and 12, by virtue of an open, current and mutual account on transactions had between plaintiff and defendant prior to said October 16, 1940, and that defendant is indebted to plaintiff by reason of said account in the sum of $11,262.75, and as set forth therein." Parker v. Shell Oil Co., (Cal.) 175 P. (2) 838. Thus, clearly, by his own allegations he does not rely upon or seek to enforce any obligation, acknowledgment of an indebtedness or promise in any writing for the payment of money. The obligation he would establish (annotation 129 A. L. R. 603) and enforce is entirely irrespective of the written contract. Herweck v. Rhodes, supra; Parker-Washington Co. v. Dennison, supra; Nicholas v. First National Bank In St. Louis, (Mo.) 188 S. W. (2) 822; McIntyre v. Kansas City, 237 Mo. App. 1178, 171 S. W. (2) 805; Lehner v. Roth, supra; Babler v. Rhea, (Mo. App.) 202 S. W. 604.

In addition the appellant contends, since the defendant entered into an agreement providing for arbitration and then failed and refused to carry out the agreement that he is precluded by equitable estoppel from relying on the bar of the statute of limitations. Annotation 130 A. L. R. 8, 42; 34 Am. Jur., Secs. 411-420. But in this case no facts are set forth from which it could be found that the defendant induced the plaintiff to refrain from instituting his suit for more than five years. Sugent v. Arnold, 340 Mo. 603, 101 S. W. (2) 715. The contract was entered into on the 16th day of October 1940 and the only fact alleged in explanation of the plaintiff's failure to institute his suit for more than five years is that throughout the years he insisted on arbitration and the defendant failed and refused to arbitrate and for that reason arbitration could not be had. The defendant's continued failure and refusal to arbitrate could not be con-

838

strued as an affirmative inducement to the plaintiff to not institute his action. Hornblower v. George Washington University, 31 App. D. C. 64, 75; Howard University v. Cassell, 126 F. (2) 6. In short, it does not appear from the facts alleged that the defendant used the agreement as a means of inducing the plaintiff to refrain from instituting his suit before it was barred by the five-year statute of limitations. 3 Am. Jur., Sec. 46, p. 878; 54 C. J. S., Sec. 255, p. 287.

Since it affirmatively appears upon the face of the plaintiff's pleading, in its entirety, that the obligation he seeks to enforce is not governed by the ten-year statute of limitations the trial court properly dismissed the petition. Accordingly the judgment is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.